UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KARLE ROYE

*Petitioner*,

v.

UNITED STATES OF AMERICA,

*Respondent*.

No. 3:22-cv-1564-MPS

**RULING ON § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Karle Roye, *pro se*, seeks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 1 at 4. For the reasons set forth below, I DENY his motion.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

I assume familiarity with the record in this case and set forth below only a brief summary of the background and the claim. *See United States v. Frank, et. al.*, D. Conn. Case No. 15-CR-00029-JBA-2; *United States v. Frank*, 749 F. App'x 5, 6 (2d Cir. 2018).

Roye is currently incarcerated in Kentucky at USP Big Sandy. Federal Inmate Locator, https://www.bop.gov/inmateloc/; Reg. No. 22407-014 (last visited Dec. 18, 2024). Roye was a member of a gang that controlled the sale of illicit drugs in the Blue Hills section of Hartford, CT. *U.S. v. Frank, et. al.*, Case No. 15-CR-00029-JBA-2; ECF No. 241 at 4, ¶ 6. The gang used force to protect and maintain control of drug trafficking activities within their territory. *Id.* ¶ 7. Roye believed that Anthony Parker, a member of a rival gang, had tried to break into a car that Roye's gang used to store drugs and money and had tried to rob the mother of a fellow gang member at gunpoint as she returned from work late at night. *Id.* ¶¶ 9, 10. On April 6, 2011, Roye and Jimel Frank shot and killed Parker while he was parked in a driveway. *Id.* ¶ 11; *U.S. v. Frank, et. al.*, Case No. 15-CR-00029-JBA-2; ECF No. 249 at 33.

1

On August 4, 2016, a jury convicted Roye of murder in aid of racketeering and conspiracy to commit the same in violation of 18 U.S.C. §§ 1959(a)(1)&(2) and 1959(a)(5). *U.S. v. Frank, et. al.*, Case No. 15-CR-00029-JBA-2; ECF No. 190. The court granted Roye's post-trial motion to acquit as to the conspiracy count. The Government appealed the acquittal, and Roye cross-appealed his conviction on the murder count.[1] The Second Circuit agreed with the Government, affirming on the murder count but reversing on the conspiracy count and directing the court to reinstate the jury's verdict on that count. *U.S. v. Frank, et. al.*, 15-CR-00029-2, ECF No. 281. On August 2, 2019, Judge Arterton re-sentenced Roye to concurrent sentences of 120 months' imprisonment and life imprisonment, and an amended judgment was entered on August 9, 2019. *Id.*, ECF Nos. 297, 299. Roye appealed and the Second Circuit affirmed his sentence. *Id.*, ECF No. 322. On November 18, 2022, Roye filed this motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. *Roye v. U.S.A.*, 22-CV-01564-MPS, ECF No. 1. Roye's motion argues that his trial counsel provided ineffective assistance in violation of the Sixth Amendment because counsel failed to present a defense of "extreme emotional disturbance" to the allegation that Roye had committed (or agreed to commit) murder.

II.     **LEGAL STANDARD**

   **A.  Section 2255 Motion**

Section 2255 permits collateral challenges to federal convictions. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to

---

[1] In his cross-appeal, Roye argued: 1) there was insufficient evidence to support his murder conviction; 2) the admission of allegedly perjured testimony deprived him of the right to a fair trial; and 3) the Court improperly admitted evidence obtained in a search. *U.S. v. Frank, et. al.*, Case No. 15-CR-00029-JBA-2; ECF No. 281 at 2-3.

vacate, set aside or correct the sentence."). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). Despite the difficulty in mounting an attack to collaterally upset a conviction, "ineffective-assistance-of counsel claim[s] may be brought in a collateral proceeding under § 2255[.]" *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Section "2255 review is narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (internal quotation marks omitted). In deciding a Section 2255 motion, the court "may properly rely on [its] knowledge of the record and may permissibly forgo a full hearing ...." *Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009).

### B. Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, the moving party must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The performance prong of the two-part *Strickland* test requires a showing that "counsel's representation fell below an objective standard of reasonableness," in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688. To satisfy the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The court must make "every effort ... to eliminate the distorting effects of hindsight, … indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] might be considered sound trial strategy." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (internal quotation marks omitted) (brackets in original). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

### III.    DISCUSSION

#### A.    Reasonableness of Counsel's Performance

Roye claims that his lawyers' performance fell below an objective standard of reasonableness because they "failed to present an extreme emotional disturbance defense." *Roye v. U.S.A.*, 22-CV-01564-MPS, ECF No. 1 at 4. Under Connecticut law,[2] extreme emotional disturbance is a partial affirmative defense that, if proven, reduces a charge of murder to a charge of manslaughter in the first degree.  The defense applies when the defendant committed the proscribed act "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be ….". Conn. Gen. Stat. §§ 53a–54a; *see also* 53a-55(a); *Vargas–Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 166 (2d Cir. 2006) (under New York law, proof of extreme emotional disturbance permits conviction of defendant for manslaughter instead of second-degree murder).

---

[2] See 18 U.S.C. § 1959(a) (VICAR statute referring to "murder [ ] … in violation of the laws of *any State* or the United States …" (emphasis added)). Although Roye was convicted of violating federal law (18 U.S.C. § 1959(a)(1)), *U.S. v. Frank*, et. al., Case No. 15-CR-00029-JBA-2; ECF No. 299, the federal crime in this case was based in part on his commission of the state offense of murder. *U.S. v. Lopez*, 2017 WL 6554955 at *4 (W.D.N.Y Dec. 22, 2017), aff'd, 823 Fed.Appx. 34 (2d. Cir. 2020) (Racketeering murder in violation of 18 U.S.C. § 1959(a) can be predicated on state-law murder in aid of racketeering.). So, EED, a partial defense to a Connecticut law murder charge, was a cognizable defense.

4

Roye's argument that his lawyers were ineffective for not claiming that he suffered from an "extreme emotional disturbance" when he shot Parker is unconvincing because there was very little evidence to support such a claim - suggesting that he cannot satisfy either the performance prong or the prejudice prong of the *Strickland* test.

To satisfy the performance prong of the *Strickland* test, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir.2000) (internal quotation marks and citation omitted). To succeed, Roye "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy," and show that counsel's performance "fell below an objective standard of reasonableness," in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688, 689.

Roye's lawyers put on a reasonable doubt defense. They attacked the credibility of the government's witnesses and the overall reliability of the Government's case. *See U.S. v. Frank, et. al.*, 15-CR-0029-JBA-2; ECF No. 245 at 120, ECF No. 246 at 50, 131, 192; ECF No. 247 at 44-45, 46, 158-59. Attacking the credibility of the Government's witnesses was sound trial strategy because the government's witnesses were vulnerable to such an attack. For example, the Government's witness, Owens, was ripe for impeachment because he had felony convictions, testified under a cooperation agreement, and had been convicted of false statements for lying to the grand jury. See ECF No. 7 at 13; *See also U.S. v. Frank et. al.*, 15-CR-0029-JBA-2, ECF No. 247 at 45 – 47; ECF No. 248 at 39-41. Another Government witness, Carter, was likewise easily impeached because his testimony was inconsistent with the statements he made to the grand jury. And the Government's lead cooperating witness, Frank, who appeared to be at least as culpable

5

as Roye for the murder, testified under a cooperation agreement that afforded him the possibility of a more lenient sentence. *U.S. v. Frank, et. al*., 15-CR-0029-JBA-2, ECF No. 247 at 8-10, 248, 282; ECF No. 248 at 36-38, 42-49; ECF No. 249 at 25, 34-35.

Once defense counsel made the strategic choice of attacking the Government's key witnesses, they likely foreclosed other choices – or at least made them much less attractive. Lawyers "navigating a criminal proceeding face[] any number of choices about how best to make a client's case," *Buck v. Davis*, 137 S. Ct. 759, 775 (2017), and sometimes the best way to make a client's case is to abandon one possible defense in order to present another one more credibly. Here, for example, presenting an extreme emotional disturbance defense would have undermined defense counsel's strategy of discrediting the Government's key witnesses, because such a defense would have had to acknowledge that Roye did, in fact, shoot Parker in the driveway on April 6, 2011, just as the Government's witnesses told the jury. Indeed, presenting such a defense could have bolstered the credibility of their testimony, including parts of that testimony that would have undermined the extreme emotional disturbance defense. *See, e.g.*, *U.S. v. Frank, et. al*., 15-CR-0029-JBA-2, ECF No. 249 at 35 (Frank admitting that he shot and killed Parker "in cold blood"); ECF No. 248 at 225-26 (Frank testifying that Roye supplied the guns and gloves in advance of the shooting).

Further, although Roye argues that there was a factual basis for an extreme emotional disturbance defense because the evidence did not show that he had planned to kill Parker but only to rob him, I agree with the Government that the evidence did not suggest that extreme emotional disturbance was a robust defense; and reasonable defense counsel could easily have concluded that it stood a substantially lower chance of success than attacking the credibility of the Government's key witnesses.  First, there is no merit to Roye's argument that the evidence

6

unequivocally showed a "lack of premeditation" on his part to kill Parker and that he had agreed only to rob Parker, *Roye v. U.S.*, 22-cv-01564-MPS, ECF No. 10 at 4-5. The Second Circuit found, contrary to the trial judge, that there was sufficient evidence to sustain the conviction for conspiracy to commit murder in aid of racketeering, pointing to the following evidence of intent to kill on the part of Roye: (1) "Roye supplied guns and gloves for the ambush"; (2) "[Co-defendant Jimel] Frank placed a call to Owens, telling him to get out of the car Parker was driving (evidently for Owens's safety)"; (3) "Frank and Roye blocked Parker's car in the driveway and approached from either side of the car"; (4) "Frank and Roye shot Parker in quick succession after a very short verbal confrontation"; and (5) "Frank and Roye fled the scene after the murder without attempting to rob Parker." *United States v. Frank*, 749 Fed. Appx. 5, 8 (2d Cir. Jan. 16, 2018). With respect to the second item in the list in the previous sentence, the jury could reasonably have found that Roye was present in the car with Frank and heard Frank call Owens to tell him to get out of Parker's car; from this, the jury could reasonably have inferred that Roye knew that the plan was to shoot Parker, not simply to rob him. *See U.S. v. Frank, et. al.*, 15-CR-0029-JBA-2, ECF No. 247 at 283-84. Further, while the trial judge found that the evidence amounted to proof of a conspiracy only to rob Parker, this finding was, as noted, rejected by the Court of Appeals, and Frank's testimony that he told Roye that "we had to – we had to take care of [Parker]" and "we was going to attempt to rob him *as well*" (emphasis added) – also cited by the Court of Appeals, 749 Fed. Appx. 5 at 7-8 – suggests that the plan was to do more than just rob Parker.

   Second, Roye exaggerates the importance of the fact that Parker, when confronted by Frank at the driver's side window of the vehicle he was sitting in, said, "I'm going to kill you." This evidence would have been a thin reed on which to ground an extreme emotional disturbance

7

defense. Frank testified that Parker's threat was directed at him, not Roye, and that only he and Parker were involved in this conversation while Roye approached from the passenger side of the vehicle. *U.S. v. Frank, et. al.*, 15-CR-0029-JBA-2, ECF No. 249 at 9, 12. Roye points to no evidence Parker was even aware of Roye's presence on the passenger side of the vehicle.

These facts do not suggest that Roye was laboring under "extreme emotional disturbance" when he opened fire. " [I]n determining whether the defendant has proven the affirmative defense of an extreme emotional disturbance by a fair preponderance of the evidence as a mitigation of murder to manslaughter the jury must find that: (a) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the Penal Code; (b) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (c) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions." *State v. Elliott*, 177 Conn. 1, 9 (1979). "Consideration is given to whether the intensity of these feelings was such that his usual intellectual controls failed and the normal rational thinking for that individual no longer prevailed at the time of the act." *Id*. at 10. Under the circumstances, Roye's overhearing Parker say "I'm going to kill you" is not enough to meet this standard.

Further, the evidence of premeditation cited above, all of which took place before Parker told Frank he was going to kill him, together with the evidence of Roye's actions after the shooting – including his fleeing the scene with Frank and the arrangements he made to dispose of the guns after the shooting, *see* ECF No. 247 at 105-11, 138-44, 147-50 – all belie any suggestion that he was acting under an "extreme emotional disturbance" at the time of the shooting. Parker's threat to kill Frank before Frank and Roye opened fire is not enough to

8

suggest that Roye was "exposed to an extremely unusual and overwhelming state" or that he "had an extreme emotional reaction to it." In any event, reasonable defense counsel could easily have concluded either that this was not a defense that stood any realistic chance of success or at least that it stood less chance of success than the strategy of attacking the credibility of the Government's key witnesses.[3]

In addition, pursuing an EED defense would likely have required Roye to take the witness stand and admit that he shot and killed Parker. This would have exposed Roye to vigorous cross-examination, including revealing to the jury his two prior felony drug and gun convictions. *See* ECF No. 241 at 7-9. "It was a reasonable tactical decision to rely exclusively on attacking the Government's witnesses and presenting independent testimony rather than to subject [Roye] to all of the risk attendant on cross-examination." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992).

Roye also claims his lawyers' performance "fell below an objective standard of reasonableness" because they did not cross-examine Jimel Frank with specific questions, *Roye v. U.S.*, 22-cv-1564-MPS, ECF No. 1 at 6, apparently aimed at supporting a defense of extreme

---

[3] Roye cites two Connecticut cases – *State v. Saunders*, 267 Conn. 363 (2004) and *State v. Schiavo*, 93 Conn. App. 290 (2006) – that he says were "first degree manslaughter [cases] due to Extreme Emotional Disturbance," ECF No. 10 at 5-6, apparently in support of his argument that the facts of his case would have supported such a defense. But neither of these cases involved a defense of extreme emotional disturbance. *Saunders* makes no mention of extreme emotional disturbance and even omits that part of the first-degree manslaughter statute when quoting the statutes under which the defendant in that case was convicted, citing instead the other two ways of committing first degree manslaughter. *See* 267 Conn. 363, 365 n.1 ("General Statutes § 53a–55 provides in relevant part: '(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person ... or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person....'"). *Schiavo* likewise makes no mention of extreme emotional disturbance; nor does it discuss why the jury in that case, in which the defendant was charged with murder, convicted instead on the lesser included offense of first-degree manslaughter, 93 Conn. App. at 295. There are three ways to commit first-degree manslaughter, only one of which involves extreme emotional disturbance, *see* Commission Comment to Conn. Gen. Stat. Sec. 53a-55, and nothing in the *Schiavo* court's factual recitation suggests that the case involved extreme emotional disturbance.

emotional disturbance.[4] "Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are … strategic in nature." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Strategic trial decisions, "if reasonably made, will not constitute a basis for an ineffective assistance claim." *Id.* It was reasonable not to ask the questions now suggested by Roye both because the questions were improper and because Roye's lawyers could not anticipate how Frank would have answered the questions. *Roye v. U.S., 22-cv-1564-MPS*, ECF No. 1 at 6. Further, it is unclear whether any of these questions would have elicited evidence to support a defense of extreme emotional disturbance.

### B.  Roye Was Not Prejudiced by a Failure to Mount an EED Defense

Roye was not prejudiced by the failure to present an extreme emotional disturbance defense because the record does not contain sufficient evidence to establish that he acted under the influence of an extreme emotional disturbance. The threshold requirement of an extreme emotional disturbance defense "is met if there is evidence that defendant's conduct at the time of the incident was actually influenced by an extreme emotional disturbance." *Murden v. Artuz*, 497 F.3d 178, 195 (2d Cir. 2007). As I have already suggested above in my discussion of the performance prong, Roye cannot meet the threshold requirement.

Roye claims extreme emotional disturbance because (1) the plan was just to rob Parker, (2) Roye stood "on the passenger side of the white Infiniti," (3) Parker was a credible threat to Wall Street/Team Grease members and their families, and (4) Parker yelled 'I'm going to kill you, I'm going to kill you.'" *Roye v. U.S.*, 22-cv-1564, ECF No. 1 at 5-6. As I have already

---

[4] Roye asserts that "[d]efense counsel … could have gotten … Frank to answer yes to the question, 'Is it fair to say that if Anthony Parker simply allowed you and Karl Roye to rob him … that he would still be alive today?'" Roye also claims that "[d]efense counsel could have gotten … Frank to confirm that … [Roye's] angle of view as to Parker's face and hands [was] obstructed." Roye also contends that defense counsel should have asked Frank, 'Is it fair to say that if you had not fired your gun, … Roye would not have fired his subsequently?'" ECF No. 1 at 6.

noted, the Second Circuit's finding that there was sufficient evidence to support the jury's verdict on conspiracy to commit murder in aid of racketeering - and the discussion of premeditation evidence behind that finding – belies Roye's argument that the plan was just to rob Parker. And as I have also noted, Parker's shouted threat to "kill you" was directed at Frank, not Roye, or so the jury could have reasonably concluded. And Roye's location near the passenger side of the Infiniti suggested if anything, that Parker was unaware of his presence — which is not a circumstance that suggests that Roye was overcome with an emotional disturbance.

Even if Roye genuinely and reasonably thought Parker's threat was directed at him, this would still have fallen far short of the evidence needed for an EED defense. The jury could reasonably have found that the driveway shooting was not the first time Roye was exposed to violence or threats of violence. Before the shooting, Roye was an active member of Team Grease, a violent gang in Hartford. *U.S. v. Frank, et. al.*, 15-CR-00029-JBA-2, ECF No. 245 at 98-99, 114. Hartford's street gangs were fiercely protective of their territories and their fellow gang members and routinely used force and violence to protect and maintain control of their territories. *Id.*, ECF No. 245 at 30, 119, ECF No. 247 at 696. In 2011, violence and gunfire were so common in Hartford that residents of Roye's neighborhood were desensitized to the sound of gunfire. During the trial, Ann Williams, a Hartford resident, testified that on the night Parker was shot, she and her husband "heard gunshots that we – we've heard, you know around the neighborhood before, so it wasn't anything." *U.S. v. Frank, et. al*., Case No. 15-CR-00029-JBA-2, ECF No. 245 at 153. The sound of nearby gunfire did not even prompt Ms. Williams to look out the window. *Id.* And Roye's criminal history prior to the shooting included convictions for

11

the distribution and sale of controlled substances and possession of firearms.[5] *Id.*, ECF No. 208 at 7-8. The evidence of Roye's acclimatization to gun violence in Hartford weighs against any notion that he was overcome by an extreme emotional disturbance when he shot Parker. *See State v. Ruben T.* (2007) 936 A.2d 270, 104 Conn.App. 780 ("though defendant claimed loss of self-control when he attacked victim, … disputes … were regular occurrence between victim and defendant, and the circumstances at time of murder were not significantly different from those surrounding any of the couple's prior interactions."); *State v. Crespo* (1998) 718 A.2d 925, 246 Conn. 665 (defendant "failed to prove extreme emotional disturbance by a preponderance of the evidence; the state effectively … suggested that defendant had regularly engaged in violent fights with victim and had been able to control his anger in similar situations.").

    Finally, Roye's conduct after the shooting likewise would have undermined the EED claim he now claims his lawyers should have made. He had the presence of mind, for example, to make arrangements to have a third person dispose of the murder weapons. And on the scene, Frank apparently did not notice that Roye was emotionally disturbed, as he gave his weapon to Roye after the shooting. *U.S. v. Frank, et. al.*, 15-CR-00029-JBA-2, ECF 249 at 16.

In sum, there was little evidence at trial to support and much evidence to rebut an EED defense. For this reason, Roye cannot demonstrate a "reasonable probability" that "the result of the proceeding would have been different," *Strickland*, 466 U.S. at 690, 694; *Giraldi v. Bartlett*, 27 F. App'x 75, 77 (2d Cir. 2001) had his lawyers presented an EED defense.

---

[5] In October 2009, while executing a search warrant at Roye's home, officers discovered a 9mm Taurus semi-automatic pistol, a .40 caliber Colt pistol with a laser sight, a loaded 9mm Smith &Wesson semi-automatic pistol with an obliterated serial number, a MAC-11 machine pistol, and boxes of ammunition. *U.S. v. Frank, et. al*., 15-CR-00029-JBA-2, ECF No. 245 at 139, 143.

## IV.    CONCLUSION

For the reasons above, I deny the motion to vacate, set aside or correct Roye's sentence under 28 U.S.C. § 2255. (ECF No. 1).

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        January 6, 2025

13